**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JERMAINE BROOKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 5744** |
| | ) | |
| **YOUNG KIM, M.D. and** | ) | |
| **WELLPATH, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Jermaine Brooks was, during the time relevant to this lawsuit, an inmate at Will County Adult Detention Facility (WCADF). Brooks has sued Dr. Young Kim, M.D., a doctor at the detention facility, as well as Kim's employer, Wellpath LLC. Wellpath is the entity that provides medical services to those detained at WCADF. Brooks asserts against Kim Fourteenth Amendment due process claims for invasion of privacy (count 1) and on a state-created danger theory (count 2). Brooks also asserts a claim against Wellpath—on a theory of *respondeat superior*—under Illinois' AIDS Confidentiality Act, 410 ILCS 305/9 (count 3).

The defendants have moved for summary judgment on all of Brooks's claims. For the reasons stated below, the Court denies the motion.

## Background

The following facts are undisputed unless otherwise noted. At the times relevant to the complaint, Brooks was detained at the WCADF on pending criminal charges. Brooks is HIV-positive. Wellpath provides medical services for a number of detention facilities nationwide, including the WCADF. Kim is a medical doctor who, at times relevant to the complaint, was employed by Wellpath to provide medical services at the WCADF. Because Brooks is HIV-positive, he was classified as "Level 3," an administrative classification within the WCADF that indicates an inmate is disqualified from working on the basis of one or more chronic conditions. Brooks testified during his deposition that he was not aware until February 24, 2020 that he was classified as a level 3 inmate.

On February 24, 2020, Brooks visited Kim in the medical clinic at the WCADF. It is unclear whether Brooks visited Kim because of chest pain he was experiencing and/or because he needed medical clearance from Kim to be employed as "a pod worker" while detained at the WCADF.[1] During the visit, the conversation between Brooks and Kim became heated and moved from within the exam room to a more public area of the clinic where other WCADF staff and inmates were present. It is undisputed that both parties' voices were raised and that several witnesses were present: Will County Sheriff's Deputies Claudia Baird and Edward Cassello, and Nurses Christina Jefferson and Nolan Neef (now Thompson). Brooks testified during his deposition that

---

[1] Brooks testified during his deposition that being a pod worker entails cleaning the pod and feeding the inmates housed in the pod. Because HIV cannot be spread through either of those activities, Brooks has—since the incident—advocated for a policy that would allow him and other HIV-positive inmates to be eligible to work in the pod despite being deemed a level 3 inmate.

approximately six to eight other inmates were also present in the clinic, though he could not recall who they were.

Brooks alleges that, during this heated exchange, Kim loudly revealed Brooks's HIV status to all those in proximity who could hear. Specifically, Brooks testified during his deposition that:

> During that process of [Brooks] talking to [Kim] explaining to him the reasons why [Brooks] could have been [in the clinic], [Kim] lost his cool. And during [Brooks] explaining to [Kim] why [he] was down there, [Kim] lost his cool, and he yelled out, "You are a level 3. You cannot be a fucking pod worker. You have HIV."

Brooks Dep. at 18:21–19:2.

Kim testified during his deposition that, during the visit, he tried to explain to Brooks multiple times that WCADF policy would not allow him to work because of his HIV status and that whoever told Brooks that he could work in the jail despite his medical condition was stupid. The latter part of that testimony is corroborated by Deputy Cassello, who testified during his deposition that he heard Kim say, loudly, "[s]omeone that's stupid told this inmate he can be an inmate worker, he's a level 3." Cassello Dep. at 43:10–20.

Kim testified during his deposition that Brooks became "upset and agitated," Kim Dep. at 81:25, and eventually walked out of the exam room. Both Brooks and Kim testified that when Brooks left the exam room, he went to speak to Nurse Jefferson— who was in the nurse's exam room across the hall from Kim's exam room—about his disagreement with Kim. Kim testified that he was frustrated with Brooks and that he followed Brooks across the hall to the nurse's exam room to continue the conversation and to ask Brooks to return to the exam room to finish the visit. When asked during his

deposition if he used the term HIV in this back-and-forth with Brooks, Kim testified that he could not remember.  Kim also testified that he could not say exactly what was said in the exam room versus in the hallway versus the nursing exam room.

As indicated earlier, Brooks testified unequivocally that Kim said to him in the presence of others, "You have HIV."  Brooks further testified that, after the incident, he was very shaken up and was "crying real bad."  Brooks Dep. at 53:4-5.  Brooks further testified that he told Deputy Baird that "[Kim] just exposed my status," so Baird let him "go in the bathroom for a minute to clean [himself] up."  *Id.* at 53:1-4.  After Brooks collected himself, another officer came to pick him up and take him back to his unit.

That same day, Deputy Baird prepared a memorandum documenting the incident.  Deputy Baird testified during her deposition that her memorandum was an accurate summary of what she had observed.  The memorandum states as follows:

> AT APPROXIMATELY 10:50 AM INMATE BROOKS, JERMAINE #19-7662 WAS SEEN BY DR. KIM IN CLINIC. WHEN INMATE BROOKS CAME OUT OF THE DOCTORS OFFICE HE APPEARED A LITTLE UPSET, WENT INTO SPEAK WITH NURSE JEFFERSON. AT THAT POINT THE SITUATION WAS CALM. DR. KIM THEN CAME OUT OF HIS OFFICE, WENT TO THE DOORWAY OF THE NURSES OFFICE AND SAID" YOUR WASTING OUR TIME, GO SIT DOWN SO I CAN SEE ANOTHER INMATE", THEN WALKED BACK INTO THE EXAM ROOM. AT THAT TIME INMATE BROOKS CAME OUT OF THE NURSES OFFICE, VISIBLY UPSET, CLENCHING FISTS AND HOLDING BACK TEARS. INMATE BROOKS EXPLAINED TO ME (DEPUTY BAIRD) THAT HE ASKED DR. LEE IF HE COULD BE A POD WORKER BECAUSE A CORRECTIONAL OFFICER SAID HE COULD BE ONE IF CLEARED BY THE DOCTOR. INMATE BROOKS FURTHER STATED "THE DOCTOR IS YELLING AT ME FOR ASKING A QUESTION". ACCORDING TO DR. KIM HE TOLD INMATE THAT DUE TO HIS DIAGNOSIS HE COULD NOT BE A POD WORKER (THIS CONVERSATION TOOK PLACE IN THE DOCTORS OFFICE). I LET INMTE GO INTO RESTROOM TO COMPOSE HIMSELF. WHEN I LET HIM OUT OF RESTROOM. THE DOCTOR THEN CAME OUT OF HIS EXAM ROOM AND STARTED RAISING HIS VOICE. DEPUTY CASSELLO ENTERED THE CLINIC AT THAT TIME. DEPUTY CASSELLO AND I MOVED INBETWEEN THE DOCTOR AND THE INMATE. THE

DOCTOR WAS THEN YELLING "YOU ARE THE STUPID", UNKNOWN AT
WHO THE COMMENT WAS DIRECTIED TORWARDS. HE CONTINUED
TO YELL "WHICH OFFICER TOLD INMATE HE COULD BE A POD
WORKER." THEN DEMANDED TO KNOW WHO TOLD INMATE BROOKS
THAT INFORMATION. I WAS SPEAKING TO DR. KIM WHEN HE STATED
IN A LOUD VOICE "YOU ARE LEVEL III", TOWARDS INMATE. NURSE C.
JEFFERSON NURSE NOLAN NEEF AND DEPUTY CASSELLO THEN
HEARD THE DOCTORSTATE "YOU HAVE HIV, YOU CAN'T BE A POD
WORKER". DOCTOR KIM WAS TOLD TO STEP AWAY AND HE HEADED
INTO THE EXAM ROOM. INMATE BROOKS WAS VISIABLY UPSET,
TEARS ROLLED DOWN HIS EYES. INMATE STATED "THE DOCTOR
JUST SAID MY DIAGNOSIS OUT LOUD, NOW I HAVE TO BE AFRAID
FOR MY SAFETY." INMATE BROOKS WAS DIRECTED TO GO INTO THE
NURSES EXAM ROOM AND SIT DOWN UNTIL I COULD GET A ROVER
TO TAKE HIM BACK TO HIS POD. I DEPUTY BAIRD, THEN CONTACTED
ROVER 6, DEPUTY CACERES TO COME TO CLINIC AND HAVE HIM
TAKE INMATE BACK UP TO HIS POD DUE TO THE INTERACTION
BETWEEN INMATE BROOKS AND DOCTOR KIM.

Pl.'s SOF, Ex. 1.

On February 25, 2020, Jennifer Briscoe, Kim's administrative supervisor,
disciplined him for his conduct vis-à-vis Brooks. Briscoe issued Kim a "Final Written
Warning" on a Wellpath "Corrective Action" form, which Kim signed. The warning
stated: "Employee was being disrespectful and unprofessional towards a patient, and
custody staff. Employee also violated HIPAA." Pl.'s SOF, Ex. 3. Briscoe claimed
during her deposition that "the Corrective Action Form did not mean that Kim violated
HIPAA guidelines." Briscoe Dep. at 90:4-6. She conceded, however, that the form did
not say Kim *may* have violated HIPAA, or that it was *alleged* he violated HIPAA, but
rather that he violated HIPAA. *Id*. at 97:24-98:2

Brooks alleges that he suffered shame, humiliation, anxiety, mental anguish,
degradation, and physical and emotional pain and suffering as a result of Kim's conduct.
Brooks testified during his deposition that his sexuality was exposed as a result of Kim's
conduct, which made him more vulnerable to all manner of violence:

> Being in jail and being gay is not an easy thing. And being gay and being in jail where gays are targeted for being raped and unwanted sexual advances, unwanted sexual treatment, unwanted things because people feel that because you're gay that you should be okay with whatever comes your way. This is a hostile environment for gay people. This is a hostile environment for gay people with HIV . . . . I have to deal with people saying "Oh you faggot, you sissy, die slow,["] because of my HIV status.

Brooks Dep. at 41:13-23–43:1-3. Brooks further testified that, after the incident with Kim, he constantly worried about being attacked and therefore showered alone and requested a single-person cell.

On September 8, 2020, Brooks was sexually harassed by another inmate named Angelo Ristick. Ristick nonconsensually groped Brooks's rear end. Brooks concedes that it is unclear whether Ristick's conduct was related to the revelation of his HIV status.

Following the incident with Kim, Brooks was physically attacked by three other inmates on two separate occasions. The first attack came from his cellmate, whose last name was either Turner or Tucker. When asked during his deposition what made Brooks think that this attack was related to his HIV status, Brooks testified that Turner/Tucker told a guard named Hale that he could no longer be Brooks's cellmate because Brooks was gay. Brooks Dep. 46:1-23.

The second altercation took place sometime in December 2021 and involved two inmates, Christopher Beale and Kendall (or Kendell) Coleman. Brooks testified during his deposition that Beale was "going around telling people about they need[ed] to stay away from [him] because [he] had HIV." *Id.* at 95:13-–95:18. Brooks confronted Beale about this, and a fight between them ensued. The parties agree that "it is unclear who first began physically fighting." Pl.'s

Resp. to Defs.' 56.1(a) SOF ¶ 15.  At some point, Brooks was on top of Beale, which caused Coleman to begin hitting Brooks in the back with a broom. Coleman struck Brooks twice in the head with a chair, breaking the chair over Brooks's head.  Brooks testified that he believed Beale must have been in the clinic on the day of the incident with Kim and thus learned of his HIV status in that manner.

Brooks testified during his deposition that no inmates have ever directly informed him that they learned of his HIV status as a result of Kim's disclosure. He also testified, however, that he never heard another inmate mention his HIV status before the incident with Kim but that afterwards, he heard other inmates speaking about his HIV status more times than he could count.

## Discussion

To succeed on their motion for summary judgment, the defendants must show that "there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When deciding a summary judgment motion, courts must "construe all inferences in favor of the party against whom the motion under consideration is made."  *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted).

## A.    Kim's disclosure

Regarding all three claims, the defendants contend that Brooks has not offered evidence sufficient to permit a reasonable jury to find that Kim actually revealed Brooks's HIV status, as opposed to just revealing the fact that he was a level 3 inmate.

This argument lacks merit. The following sentence from the defendants' motion for summary judgment is telling: "*It is not clear* that Plaintiff's HIV status itself was ever revealed." Defs.' Mot. for Summ. J. at 6. The defendants are entitled to summary judgment only if no reasonable juror could find in favor of Brooks, a conclusion that can only be reached in the absence of evidence to the contrary. The proposition that a particular key fact is unclear comes nowhere near entitling the defendants to summary judgment. Characterizing the evidence on what Kim said during his altercation with Brooks as unclear is basically another way of saying that this key factual question is genuinely disputed. That forecloses summary judgment.

It is undisputed that Brooks went to see Kim in the clinic on the day of the incident, that the conversation turned heated and both Brooks and Kim began raising their voices, and that Kim proceeded to make statements regarding Brooks's ability to work in the jail, based on his health, such that others could hear. It is also undisputed that there were several witnesses to the altercation. What is certainly disputed, thus requiring a trial, is whether—or to what extent—Kim disclosed Brooks's HIV status during the incident.

Indeed, the defendants themselves concede in their statement of material facts that "*[i]t remains disputed* whether [Kim stated that Brooks was unable to work] by citing Plaintiff's HIV-positive status or by referring to Plaintiff as a 'Level 3' or a 'Category 3'— an administrative classification within the WCADF that indicates a detainee is

8

disqualified from working on the basis of one or more chronic conditions." Defs.' SOF ¶ 8 (emphasis added). There is plenty of evidence that would permit a jury to find in Brooks's favor on this point. For instance, Brooks testified that Kim told him "[y]ou are a level 3. You cannot be a fucking pod worker. You have HIV." Brooks Dep. at 18:21-19:2. And Deputy Baird wrote in her memorandum that "[n]urse C. Jefferson Nurse Nolan Neef and Deputy Cassello then heard the doctor state 'you have HIV, you can't be a pod worker.'" Pl.'s SOF, Ex. 1.[2] Deputy Baird also testified during her deposition that Nurse Thompson (formerly Neef) told her that she heard Kim make the just-quoted statement.

In their Rule 56.1(a) Statement of Material Facts, the defendants state that Deputy Cassello, Deputy Baird, Nurse Thompson, and Nurse Jefferson all testified during their depositions that they heard Kim loudly refer to Brooks as a "Level 3." Some recalled hearing only that term and not any specific reference to Brooks having HIV. Others testified that they did not recall whether Kim also specifically referenced Brooks's HIV status. This testimony is contradicted not only by Brooks's own deposition

---

[2] In their reply and in their response to Brooks's Local Rule 56.1(a)(2) statement of additional material facts, the defendants contend that the memorandum written by Deputy Baird after the incident is inadmissible hearsay and that the Court should therefore disregard it. The Court need not adjudicate the admissibility of the Baird memorandum definitively at this point, as Brooks has shown there is a genuine factual dispute even if the memorandum is excluded. The Court notes, however, that it may be admissible under the hearsay exception contained in Federal Rule of Evidence 803(8)(A)(iii), if not otherwise. *See generally Mathin v. Kerry*, 782 F.3d 804, 809 (7th Cir. 2015) ("The public records exception of Federal Rule of Evidence 803(8) constitutes a recognition that information may be passed among multiple public officials before being recorded in a document, and accordingly a report will not be excluded merely because the author did not have firsthand knowledge of the reported matters."); *see also*, *Halloway v. Milwaukee County*, 180 F.3d 820, 827 n. 9 (7th Cir.1999) ("[T]he district court retains significant discretion as to whether [public records that arguably fall within Rule 803(8)(iii)] ought to be admitted.").

testimony, but by the incident summary drafted just afterwards by Deputy Baird, as well as the "Final Written Warning" issued to Kim that states Kim was disrespectful to an inmate and violated HIPAA.

The defendants contend that Brooks's deposition testimony is self-serving and therefore insufficient to create a genuine issue of material fact. There is no such rule. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (stating that "[d]eposition testimony . . . is by its nature [] self-serving" and that "the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). Brooks described the incident in his deposition based on his personal knowledge and may therefore use his own testimony to show the existence of a genuine factual dispute. A reasonable juror could credit Brooks's testimony even if it is contradicted by the testimony of others.

In sum, Kim's disclosure of Brooks's HIV status—which is the central issue of this case—is a genuinely disputed fact. The defendants are therefore not entitled to summary judgment on this basis.

**B.     Injuries**

Regarding all three claims, the defendants contend that Brooks has not offered any evidence that would permit a finding that he was injured by Kim's conduct.

The Court disagrees. As outlined above, it is undisputed that Brooks was physically attacked on two separate occasions following the incident with Kim. The defendants contend that it is unknown why these attacks occurred, but Brooks testified during his deposition that he was attacked because of his HIV status, and a reasonable juror could find that fact corroborated by the comments from other inmates referenced

10

earlier. And though Brooks conceded that he could not definitively say that the incident when he was sexually harassed was connected to Kim's disclosure, a reasonable juror could draw such a connection: Kim's disclosure of Brooks's HIV status could have been interpreted by other inmates as effectively a disclosure of his sexuality that in turn opened him up to unwanted sexual advances. There is evidence that after this, Brooks was subjected to unwanted groping by another male inmate.

Deputy Baird also stated in her memorandum that tears were rolling down Brooks's face after the incident and that he told her he feared for his safety because Kim had just said his diagnosis out loud. Brooks confirmed this during his deposition, during which he also testified that his pre-existing anxiety and depression were considerably worse after Kim revealed his HIV status. The defendants contend that "[Brooks] readily admitted that contrary to his pleadings, his life was not actually threatened at any given point." Defs.' Mot. for Summ. J at 5. But Brooks also stated "I fear for my life all the time. That's what I'm trying to get you to understand. All the time." Brooks Dep. 62:2–7.

In sum, the evidence would permit a reasonable jury to find a causal connection between Kim's conduct and Brooks's claimed injuries. The defendants are therefore not entitled to summary judgment on this basis.

## C. Due process claims

Brooks contends that Kim violated his due process rights under the Fourteenth Amendment in two ways. First, he contends that Kim's open disclosure of his HIV status invaded his privacy. Second, Brooks contends that Kim's disclosure created a danger to him that did not otherwise exist. The Court will address each of these claims

11

in turn.

### 1. Invasion of privacy

#### a. Merits

Brooks's first due process claim (count one) is based on the allegation that, by publicly revealing Brooks's HIV status, Kim invaded his constitutional right to privacy under the Fourteenth Amendment. Kim has moved for summary judgment on this claim, contending that "rights to privacy largely sound in state common law and have not yet been elevated to a constitutional level." Defs.' Mot. for Summ. J. at 3. The Court disagrees.

The Court reaffirms its decision on this point in *Logan v. City of Evanston,* No. 20 C 1323, 2020 WL 6020487 (N.D. Ill. Oct. 12, 2020). In *Logan*, the Court noted that "[t]he Supreme Court has recognized a right to privacy under the Fourteenth Amendment that includes the right 'not to have [one's] private affairs made public by the government.'" *Id.* at *4 (citing *Whalen v. Roe,* 429 U.S. 589, 599 n.24 (1977)); The Court also pointed out that "the Seventh Circuit has stated that the Fourteenth Amendment confers a fundamental 'right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information.'" *Id.* at *10 (citing *Wolfe v. Schaefer,* 619 F.3d 782, 785 (7th Cir. 2010)).

Brooks's HIV status is not only private medical information; it is also highly sensitive given the connection some draw between HIV-positive status and sexual orientation, combined with the stigma around homosexuality in correctional facilities. *See Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995) ("A number of cases in the lower federal courts, including our own, building on *Whalen* and *Nixon*,

12

recognize a qualified constitutional right to the confidentiality of medical records and medical communications."); *see also*, *Denius v. Dunlap*, 209 F.3d 944, 957 (7th Cir. 2000) ("medical information may be a form of protected confidential information because of its intimate and personal nature."); *Wolfe*, 619 F.3d at 785 (constitutional protection of privacy includes medical "information that most people are reluctant to disclose to strangers.").  Brooks himself testified during his deposition that he considers his HIV status "the worst thing that a person can know about [him] . . . because that's [his] personal battle … [and his] personal business."  Brooks Dep. at 43:6–9.

The Court concludes that Brooks has a viable invasion of privacy claim under the Fourteenth Amendment.  Kim is not entitled to summary judgment on count one on this basis.

### b.    Qualified immunity

Kim also seeks summary judgment on Brooks's invasion of privacy claim on the basis of qualified immunity.  Qualified immunity "protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).  In assessing a defense of qualified immunity, the Court considers "(1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925-26 (7th Cir. 2011).

Kim's motion is insufficient to invoke qualified immunity as a basis for summary judgment.  His entire discussion of the point consists of one general quote regarding the

law of qualified immunity followed by a single conclusory sentence that states, "[a]ssuming the Court were to now find that Dr. Kim's action amounted to a constitutional invasion of privacy claim, there is no precedent such that Dr. Kim otherwise had notice such that qualified immunity is defeated." Defs.' Mot. for Summ. J. at 7. That argument is unsupported and entirely conclusory. The Court concludes that Kim has forfeited the point. *Schaefer v. Universal Scaffolding & Equip., LLC,* 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Even if it were not forfeited, Kim's qualified immunity defense would fail on the merits. As just discussed, the Fourteenth Amendment right to privacy of highly personal medical information is clearly established. *See Denius*, 209 F.3d at 956 (upholding Fourteenth Amendment substantive due process claim; "this Circuit has outlined a clearly established substantial right in the confidentiality of medical information that can only be overcome by a sufficiently strong state interest"); *see also Anderson*, 72 F.3d at 522; *Schaill v. Tippecanoe Cty. Sch. Corp.*, 864 F.2d 1309, 1322 n.19 (7th Cir. 1989) (explaining that there is "a substantial privacy interest in the confidentiality of medical information"). Regarding the deprivation of this right, there is ample evidence to support a finding that Kim violated Brooks's privacy by disclosing Brooks's HIV status.

For these reasons, Kim is not entitled to summary judgment on count one on the basis of qualified immunity.

### 2. State-created danger

Brooks's second due process claim (count two) is based on the theory of a "state-created danger exception," which is an exception to the general rule that a

"State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause" of the Fourteenth Amendment. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).

Under the state-created danger exception, "liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise [have] faced." *Buchanan-Moore*, 570 F.3d at 827. To prevail on such a claim at trial, a plaintiff must prove by a preponderance of the evidence that: (1) the state, by its affirmative acts, created an increased danger to the plaintiff, (2) the state's failure to protect the plaintiff from this danger proximately cause an injury to the plaintiff, and (3) the state's failure to protect the plaintiff shocks the conscience. *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817-18 (7th Cir. 2007).

### a. Creation of danger and injury

Kim contends that Brooks has failed to offer evidence that would permit a reasonable jury to find the creation or increase of a danger to him or that he was harmed by the state's failure to protect him from that danger (the first and second elements of the claim). As sufficiently addressed above, there is a genuine factual dispute regarding both of these issues, which are common to all of Brooks's claims.

The first issue essentially involves a repeat of Kim's contention that Brooks has not offered evidence that would permit a finding that Kim actually disclosed his HIV status and thus put him in danger. The Court has already overruled that contention. Regarding the second issue, Brooks does not merely allege that Kim's conduct created a *risk* of harm. Again, as previously addressed, Brooks has alleged, and has offered

15

evidence that would permit a finding, that he suffered actual injuries as a result of Kim's conduct. *See Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019) ("A due-process claim of this kind requires proof … [that] "the government's failure to protect against the danger caused the plaintiff's injury).

### b.    Knowledge of risk

Kim next contends that "[i]t cannot be said that Dr. Kim had actual knowledge of any particular risk to Plaintiff." Defs.' Mot. for Summ. J. at 8. It is not clear that actual knowledge is a required element of a state-created danger claim. But even if knowledge is required, there is ample evidence in the record that would permit a finding that Kim knew that revealing Brooks's HIV status—or any patient's HIV status for that matter—would expose him to an increased risk of harm. It is undisputed that several staff members were in close proximity at the time of the incident, and those witnesses did not dispute the presence of other inmates in the clinic. And Brooks testified during his deposition that, although he could not recall their names, somewhere between six to eight inmates were also in the clinic that day. More importantly, the Court agrees with Brooks that a reasonable jury could find that it would be "apparent to someone who works in a jail that publicizing a detainee's positive HIV status to other detainees would place that detainee at risk of harm." Pls.' Resp. at 8.

### c.    Duty to protect from harm

Next, Kim contends that Brooks cannot show that Dr. Kim has any responsibility for security functions in the WCADF and thus cannot show that he was responsible for or had the authority to protect Brooks from any harm. This contention completely misses the point. Kim may not have had the responsibility to perform security functions,

but he did have the responsibility not to disclose highly sensitive medical information, particularly the kind that would put Brooks at an increased risk of harm. Kim himself admitted this during his deposition. *See* Kim Dep. at 43:19–23 ("Q: And you were aware as of February 2020 that there were strict limitations on the disclosure of that information? A. Yes."). That's what the lawsuit is about. As indicated, a reasonable jury could find that Brooks suffered harm that was proximately caused by Kim's alleged misconduct.

### d. Conscience-shocking conduct

Finally, Kim disputes the existence of any evidence to support the third element of Brook's state-created danger claim, namely, that Kim's conduct shocks the conscience. This element requires a culpable state of mind equivalent to deliberate indifference. *King*, 496 F.3d at 819. The Court concludes that a reasonable juror could find, on the present record, that Kim was—at a minimum—deliberately indifferent to the risk of harm that would follow his revelation of Brooks's HIV status.

In sum, the Court denies Kim's motion for summary judgment on count two.

## C. AIDS Confidentiality Act claim

In count three, Brooks asserts a claim under the AIDS Confidentiality Act (ACA) against Wellpath, for Kim's conduct, on a theory of *respondeat superior*. Wellpath raises three challenges to this claim that it contends entitle it to summary judgment.

### 1. Exception to the ACA

Wellpath first contends that, as a physician, Kim is exempted from the ACA and was authorized to disclose Brooks's HIV status. Specifically, Wellpath contends that Kim is "clearly the sort of party that is entitled to make such disclosures, as 410 ILCS

305/9(1)(c), which indicates disclosures may be made by: 'An authorized agent or employee of a health facility or health care provider. . .'" Def.'s Mot. for Summ. J. at 10. This is a patent misreading of the ACA's language. Section 9(1)(c) says that disclosures may be made *to* health care providers, not *by* them as Wellpath contends. Wellpath's argument is frivolous.

### 2. Preemption

Wellpath next contends that the ACA is preempted by constitutional law. Defs.' Mot. for Summ. J. at 10. The Court disagrees.

Wellpath's discussion of this point is, again, woefully inadequate. It does not describe (or even summarize) the law of preemption, which form of preemption it invokes, or even which "constitutional principles" it contends preempt the ACA. *Id.* at 11. Instead, Wellpath rests its entire preemption argument on dicta from *Anderson v. Romero*, 72 F.3d 518 (7th Cir. 1995) that it takes completely out of context. The quote Wellpath relies on states:

> Nor can the fact that the Illinois AIDS Confidentiality Act, made applicable to these defendants by Illinois Administrative Rules, Title 20, § 107.310, forbids the disclosure of the results of an HIV test, be decisive. 410 ILCS 305/5, 305/10. Any duty to protect prisoners from lethal encounters with their fellows that is derived from the Eighth Amendment would take precedence over a state law.

*Id.* at 525. Wellpath then states, in a conclusory fashion, that "any remaining questions about whether any such disclosures were proper cannot be evaluated under the AIDS Confidentiality Act, but instead under Constitutional principles." Def.'s Mot. for Summ. J. at 11.

The quoted language from *Anderson* has nothing to do with a plaintiff's ability to pursue a claim under the ACA. Moreover, a violation of the ACA and a violation of the

18

Eighth Amendment—a claim that Brooks does not assert—involve significantly different elements, as the two provisions are aimed at protecting different interests.

Wellpath also contends in support of its preemption argument that "the conversation between Dr. Kim and Plaintiff was not spontaneous and without purpose, but rather, was directly connected to Plaintiff's ability to work within the jail." Defs.' Mot. for Summ. J. at 11. Wellpath fails to explain, and the Court cannot figure out, how this argument bears on preemption. Wellpath has therefore forfeited the point. *See Schaefer,* 839 F.3d at 60. If anything, this contention only serves to undercut Wellpath's contention regarding *respondeat superior*, discussed in more detail below.

In sum, there is no basis to conclude that the ACA is preempted by the U.S. Constitution.

### 3.  *Respondeat superior*

Finally, Wellpath contends that it cannot be held liable for Kim's actions on a *respondeat superior* theory. The parties agree that *respondeat superior* liability attaches "(1) if the acts are of a type the employee is employed to perform; (2) if the acts at issue occur substantially within the authorized time and space limits; and (3) if the acts are done, at least in part, by an intent to serve the employer." *Twardy v. Nw. Airlines, Inc.*, No. 00 C 6493, 2001 WL 199567, at *3 (N.D. Ill. Feb. 28, 2001) (citing *Hargan v. Sw. Elec. Coop.*, 311 Ill. App. 3d 1029, 1031, 725 N.E.2d 807, 809 (5th Dist. 2000)). Wellpath contends that the challenged conduct was not of the type Kim was employed to perform and that, even if it were, it was not done with the intent of serving Wellpath. The Court disagrees.

A reasonable juror could find that Kim was acting in his capacity as an employee

of Wellpath when interacting with Brooks, a patient, about his medical condition at the time of the incident.  The incident occurred in the WCADF's clinic, while Kim was on duty, and during and in the course of a medical visit.  That's enough to enable a jury to find Wellpath liable for Kim's alleged actions.  Further, Wellpath disciplined Kim for his actions vis-à-vis Brooks, which further indicates that the actions involved his duties as a Wellpath employee.  The Court also notes that the very justification that Kim and Wellpath have repeatedly offered for his actions—that "Dr. Kim's statements . . . were permitted by virtue of public health concerns within a jail like the WCADF"—supports a finding that Kim was serving his employer at the time of the incident.  Defs.' Mot. for Summ. J. at 11.

Wellpath also contends that it would be "difficult" to infer that someone could be serving their employer while also "losing their cool."  *Id.* at 13.  First, "difficult to infer" does not translate into legal insufficiency of the evidence; the question is whether a reasonable inference may be drawn—which it can in this situation.  Moreover, it cannot possibly be the case that whenever an employee loses his or her cool, they are no longer acting in their capacity as an employee for purposes of *respondeat superior*.  Wellpath offers no binding or persuasive authority to the contrary and is therefore not entitled summary judgment on this basis.[3]

---

[3] Nurse Jefferson's deposition testimony also suggests that Kim was not angry after the incident and continued working as usual:

> Q. And did you see Dr. Kim either expressing anger or being angry after this incident, like, you know, in the -- in the hour after this incident?
> A. I don't think so.
> Q. Did -- did you continue to work in the clinic that -- the rest of the afternoon?
> A. I did.

**Conclusion**

For the foregoing reasons, the Court denies the defendants' motion for summary judgment [dkt. no. 97].  The case is set for a telephonic status hearing on May 19, 2023 at 8:55 a.m. to set a trial date and discuss the possibility of settlement.  The following call-in number will be used:  888-684-8852; access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 10, 2023

---

Q. And did Dr. Kim see other patients?
A. Yes.
Q. Okay. And how was he?
A. He was his normal self. There was no raised voices. There was no mention of Mr. Brooks after that.

Jefferson Dep. at 48:11–49:3.